IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN VITA,<br><br>    For herself and the Class,<br><br>    v.<br><br>BETH ISRAEL DEACONESS MEDICAL CENTER, INC.,<br><br>    Defendant. | Case No. 1:25-cv-11383-JEK |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION TO AMEND COMPLAINT

**I.  PRELIMINARY STATEMENT**

Plaintiff Kathleen Vita respectfully moves the court to grant her leave to amend her current Amended Complaint against Defendant Beth Israel Deaconess Medical Center, Inc. ("BIDMC") to address the evolving standards and court guidance for pleading a claim under the Electronic Communications Privacy Act ("ECPA") involving the use of tracking technologies on hospital websites.

Plaintiff's Proposed Second Amended Complaint is attached to her motion as Exhibit A. A redline of the Proposed Second Amended Complaint against the current Amended Complaint, which shows the changes and additions the amendment makes, is attached to the motion as Exhibit B.

Plaintiff's motion to amend should be granted for the reasons set forth herein.

**II.  OVERVIEW OF FACTS ALLEGED IN PROPOSED SECOND AMENDED COMPLAINT**

Plaintiff brings this action for herself and a class of similarly situated individuals to remedy the secret interception of the contents of highly sensitive communications between healthcare consumers and the defendant, BIDMC, including but not limited to those consumers' individually

identifiable health information ("IHII") and protected health information ("PHI") (referred to collectively as "Private Information"). Ex. A ¶ 1.

Specifically, Plaintiff alleges that BIDMC intercepted and disclosed its communications with Plaintiff and other Class Members who communicated with BIDMC through a website maintained by BIDMC (the "BIDMC Website"). BIDMC decided to place on its website hidden code for "tracking technologies" (what BIDMC refers to as "Ad Tech"), which enabled Google, Facebook, and other companies to secretly eavesdrop on Plaintiff's and Class members' communications with BIDMC. Those third parties, including Google and Facebook, then associated the intercepted communications with the real-world identities of individuals known to Google and Facebook. *Id.* ¶ 2. The Ad Tech is specifically designed to allow website owners like BIDMC to optimize the delivery of targeted advertising. *Id.* ¶¶ 35-58.

BIDMC intercepted patient communications and disclosed them to third parties such as Google and Facebook to advance BIDMC's marketing efforts. The intercepted communications included requests for information on particular medical conditions and treatments, keyword searches, doctor searches, appointment requests, bill payments, and access to the website's patient portal. *Id.* ¶¶ 78-134. Those interceptions disclosed to third parties that a specific patient sought confidential medical care from BIDMC. BIDMC subsequently targeted advertisements to patients on Google and Facebook's platforms based on those intercepted communications. *Id.* ¶¶ 3, 6.

BIDMC did not disclose to the Plaintiff and Class Members that it intercepted and disclosed to third parties such as Google and Facebook the contents of individuals' communications with BIDMC or that those third parties and BIDMC used the content of the intercepted communications for targeted advertising. BIDMC also did not seek or obtain patients' consent for such interceptions, the disclosure of the intercepted communications, or the subsequent use of the intercepted communications for marketing. On the contrary, BIDMC **falsely** told healthcare consumers, through their published online policies and terms of service, that they do **not** share such information. *Id.* ¶ 7.

At the time of the interceptions, BIDMC knew of the privacy implications of deploying the tracking technologies throughout its website, including on pages like the patient portal and bill payment pages, the use of which reflected patient status. Indeed, Google and Facebook expressly directed BIDMC to obtain user consent for all tracking technologies and not to use tracking technologies on healthcare webpages. *Id.* ¶ 47. Notwithstanding this knowledge, BIDMC deployed the tracking technologies, including on pages specifically designed for patients (including its patient portal) without obtaining user consent. Indeed, BIDMC deployed the tracking technologies for that very purpose: to disclose a patient's status as a BIDMC patient, and that patient's communications on its website, so that BIDMC and others could target those patients with advertising on Google and Facebook's advertising platforms, which BIDMC used. *Id.* ¶¶ 8, 46, 55, 86.

BIDMC intercepted communications for the primary purpose of committing criminal and tortious acts, including acts that violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered § of 42 U.S.C.S.), and Massachusetts statutory and common law torts. HIPAA prohibits the (i) disclosure or (ii) use of Private Information without informed consent, including, specifically, the use of Private Information for marketing purposes. *Id.* ¶¶ 4, 138-164. As detailed in and supported by the factual allegations throughout the proposed Second Amended complaint (*see, e.g., id.* ¶¶ 32, 33, 38-48, 51-58, 72-73, 78, 86-88, 95, 102-04, 106, 108, 110, 114-15, 118, 119, 122, 123, 126, 128, 133, 148, 157, 161, 176), BIDMC intercepted patient communications containing Private Information for the primary purpose of (i) disclosing the contents of those communications to third-party marketing companies; and (ii) subsequently using the intercepted communications to advance BIDMC's marketing of its services to patients, which are acts that both violate HIPAA and Massachusetts tort law. *Id.* ¶ 4.

BIDMC was motivated to use health information in violation of HIPAA and Massachusetts law to serve its own financial self-interest in maximizing the effectiveness of its online marketing,

3

including targeted advertisements. Because BIDMC's primary purpose was to commit acts which were criminal and tortious, the ECPA's one-party consent defense does not apply, and the ECPA thus provides a remedy for BIDMC's interception of electronic communications, enforceable against BIDMC. *Id.* ¶¶ 13, 203-05.

BIDMC's actions violated the ECPA, the Massachusetts Privacy Act, G.L. c. 214 § 1B, and Massachusetts common law. *Id.*, Counts I–VII.

### III. PROCEDURAL HISTORY

Plaintiff filed her initial complaint in this case in the Massachusetts Superior Court. The original state court complaint made a single claim against BIDMC for violation of the Massachusetts Wiretap Act, M.G.L. c. 272 § 99 ("MWA").

On October 31, 2023, the Massachusetts Superior Court denied BIDMC's motion to dismiss, rejecting BIDMC's arguments that (i) the Massachusetts Wiretap Act should be limited to human-to-human conversation; (ii) the interceptions were not secret; and (iii) the interceptions were made in the ordinary course of BIDMC's business. The Superior Court, however, reported its decision denying the motion to dismiss for interlocutory review.

The Massachusetts Supreme Judicial Court took direct appellate review of the case. On October 24, 2024, the Supreme Judicial Court, in a split decision, reversed the Superior Court's order denying the motion to dismiss, holding that the Massachusetts Wiretap Act was ambiguous as to whether it encompassed the type of electronic website communications Plaintiff described in her original complaint. *Vita v. New England Baptist Hospital*, 494 Mass. 824 (2024). The Court, however, "emphasize[d] that the Legislature has provided other statutory and common-law causes of action," including "negligence, breach of implied contract, unjust enrichment, breach of fiduciary duty, [and a] right to privacy," including referencing, in particular, the Massachusetts Right to Privacy Act, G.L. c. 214 § 1B. *Id.* at 849-50. The Court also observed that the federal wiretap act, known as the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2511(1), *et seq.*), had been amended

4

(unlike the Massachusetts act) to unambiguously cover "electronic communications," which is defined in a way that "would appear to cover many website browsing activities." *Id.* at 846.

The Supreme Judicial Court, although reversing the Superior Court, did not direct that judgment be entered, recognizing, at least implicitly, that Plaintiff might amend her complaint to assert other claims the Supreme Judicial Court indicated were potentially cognizable based on the facts Plaintiff had alleged. In light of the Supreme Judicial Court's decision, on December 9, 2024, Plaintiff moved to amend her state court complaint to assert new claims under the ECPA, the Massachusetts Privacy Act, and several claims under common law. Defendant BIDMC opposed the motion but notably did not argue that amending the complaint to add an ECPA claim would be futile. The Superior Court granted the motion to amend on April 23, 2025, noting that "Defendants have not argued futility." Doc. No. 1-21.

Plaintiff filed her amended complaint in Superior Court on April 25, 2025. Doc. 15-1. The amended complaint alleges that BIDMC's conduct violated, *inter alia*, the ECPA. The ECPA prohibits the interception of the content of any electronic communication. The ECPA has a one-party consent defense. However, that defense is unavailable if the communication is intercepted for the purpose of committing any criminal or tortious act (the "crime-tort exception"). *See* 18 U.S.C. § 2511(2)(d).

On May 15, 2025, BIDMC removed the case to this Court. Doc. No. 1. On June 13, 2025, BIDMC moved to dismiss the amended complaint. Doc. Nos. 12-13. Plaintiff opposed that motion on July 25, 2025. Doc. No. 15. A hearing is scheduled for October 15, 2025.

By the present motion, Plaintiff seeks to amend the complaint to address the new and evolving legal standards applying to ECPA claims involving tracking technologies, including specifically the crime-tort exception. The proposed amendments:

(i)   explain further how the primary function and purpose of tracking technologies is targeted advertising and other marketing efforts by the business that deploys the tracking technologies

5

(*see* Ex. A. ¶¶ 32, 33, 38-48, 51-58, 72-73, 78, 86-88, 95, 102-04, 106, 108, 110, 114-15, 118, 119, 122, 123, 126, 128, 133, 148, 157, 161, 176);

(ii)    show how tracking technology vendors notified the hospitals that the communications would be used to facilitate such targeted advertising and that they should not use the technologies on health-related pages, but that the hospitals deployed the technologies on patient-specific pages anyway (*see id.* ¶¶ 40-42, 43-45, 47, 51, 53-54, 57);

(iii)    explain further how the disclosures of sensitive communications and the subsequent marketing use of the intercepted communications are acts distinct from the interceptions (*see id.* ¶¶ 2-8, 45-46, 51-56, 58, 94, 104-05, 107, 109-10, 114, 117-18, 121-22, 125, 127, 132-33, 147-48); and

(iv)    explain in further detail how, despite the warnings from Facebook and Google, the hospitals deployed tracking technologies on pages that revealed patient status and sensitive health information (*see id.* ¶¶ 3-8, 15-16, 24, 105, 107, 109-10, 115, 117, 125, 127-33, 157-59, 198-99).

The present motion to amend is the first time Plaintiff would be amending any ECPA claim.

IV.    **ARGUMENT**

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Particularly where leave to amend is sought before discovery and before any motion for summary judgment, amendment is proper so long as the proposed amendment complies with Rule 12 and there is no "'undue delay, bad faith, futility, or [lack of] due diligence on the movant's part.'" *Arana v. Molta*, 2025 U.S. Dist. LEXIS 148664, at *3 (D. Mass. Mar. 20, 2025) (quoting *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 20 (1st Cir. 2017)).

A.    *Courts Have Freely Granted Leave to Amend ECPA Claims as the Law on the Crime-Tort Exception Has Developed.*

Courts nationwide have considered motions to dismiss ECPA claims relating to tracking technologies on healthcare websites. Those motions have focused on several issues, including what allegations are required to sufficiently allege the applicability of the ECPA's crime-tort exception to

its one-party consent defense. As set forth in the brief on Defendant's motion to dismiss, the current complaint alleges sufficient facts to assert an ECPA claim under prevailing case law on the crime-tort exception. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss, Doc. No. 15, pp. 13-20; Plaintiff's Notice of Supplemental Authorities, Doc. No. 24 (describing recently decided cases).

Plaintiff recognizes, however, that the law on the crime-tort exception as applied to tracking technologies has emerged rapidly (and not always consistently) over the last several years. Courts considering similar claims have applied different legal standards and drawn differing lines concerning the sufficiency of the allegations to invoke the crime tort exception. As this Court observed in *Doe v. Lawrence Gen. Hosp.*, "apart from differing facts … the mode of analysis differs considerably among many of the available decisions." 2025 U.S. Dist. LEXIS 195964, at *21 (D. Mass. Aug. 29, 2025).

In light of recent developments in the case law on ECPA claims against hospitals related to the allegations required for the crime-tort exception, Plaintiff moves to further amend the complaint. Although Plaintiff believes the allegations of the pending complaint are sufficient and the motion to dismiss should be denied, Plaintiff seeks to add factual allegations that address certain aspects of the complaint on which recent decisions in this District and elsewhere have focused, establishing new standards.

Against this changing legal landscape, courts have freely granted litigants leave to amend their pleadings after announcing the applicable pleading standard and then upheld their amended complaints. For example, BIDMC cites *Williams v. TMC Health*, 2024 U.S. Dist. LEXIS 178452 (D. Ariz. Sept. 30, 2024), *Doe v. Upperline Health, Inc.*, 2024 U.S. Dist. LEXIS 221634 (S.D. Ind. Sep. 24, 2024) (S.D. Ind. Sept. 24, 2024) and *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) in support of its motion to dismiss the ECPA claim. In each of those cases, after initially dismissing the complaint based on legal standards the district courts had announced in the earlier decisions BIDMC cites, the courts granted leave to amend, permitting the plaintiffs to adapt

their claims to the newly announced legal standards, and sustained the ECPA claims asserted in the amended complaints.

The *Williams* court permitted the plaintiff to amend the complaint. The amended complaint added allegations showing that the medical provider "was on notice regarding how data containing health information may be disclosed or used if tracking technologies were embedded on their website," including for the provider's own "advertising," and the provider deployed the technologies with such knowledge to amplify its own advertising. *Williams v. TMC Health*, No. CV-23-00434 (D. Ariz. Aug. 19, 2025) (Doc. 24-1). Based on those allegations, the court concluded the plaintiff adequately alleged the hospital "intercepted data to disclose and use [the communications] in violation of HIPAA." *Id.* at 6-7.

Similar to *Williams,* other courts that BIDMC cites in support of its motion to dismiss initially dismissed ECPA claims for failure to adequately plead facts for the crime-tort exception, but then, after announcing legal principles that govern the crime-tort exception, have permitted the plaintiffs to amend their complaints to add factual allegations in response to the newly articulated legal principles. Most significantly, after the plaintiffs amended their complaints, the courts upheld the further amended complaints, holding that they adequately pleaded the crime-tort exception. *See Jarrett v. Upperline Health*, No. 1:23-cv-01261, Doc. No. 117 at 3, 5 (S.D. Ind. Aug 8, 2025) (Doc. 24-2); *Kurowksi v. Rush Sys. for Health*, 2024 U.S. Dist. LEXIS 126837, at *4-22 (N.D. Ill. July 18, 2024) (denying motion to dismiss further amended complaint that added allegations to support the crime-tort exception); *see also Hartley v. University of Chicago Med. Ctr.*, 2024 U.S. Dist. LEXIS 78517, at *2-7 (N.D. Ill. Apr. 30, 2024) (denying motion to dismiss after complaint was amended to add allegations supporting the crime-tort exception).

This Court took a similar approach in *McManus v. Tufts Med. Ctr*. where it announced new standards, dismissed the case without prejudice, and granted leave to replead. *McManus v. Tufts Med. Ctr., Inc.*, 2025 U.S. Dist. LEXIS 191546, *8-10 (D. Mass. Sept. 29, 2025) ("For the reasons stated

8

above, Defendant's motion to dismiss the ECPA claim is GRANTED without prejudice and with leave to amend within 21 days"); *see also Doe v. Lawrence Gen. Hosp.*, 2025 U.S. Dist. LEXIS 194963, *2 (D. Mass. Sept. 30, 2025) ("the Report and Recommendation (Docket No. 41) is accepted, in part, and rejected, in part, such that defendant's motion to dismiss (Docket No. 15) is ALLOWED but the case will not be remanded pending resolution of plaintiff's pending motion to amend her complaint.").

The decisions involving the use of tracking technologies on healthcare websites which permitted amendment reflect a reasonable approach given the evolving nature of the law, in which courts increasingly affirm such claims after permitting the plaintiff to amend their complaints to respond to courts' pronouncements of law governing the crime-tort exception. The recent trend of authority on these cases has shifted to the plaintiffs' favor, as plaintiffs have drafted and amended their complaints to respond to the evolving legal standards with respect to ECPA claims, which have been upheld by the courts.[1]

---

[1] See *Williams v. TMC Health*, No. CV-23-00434 (D. Ariz. Aug. 19, 2025) (Doc. No. 24-1) at 6-7 (sustaining ECPA claims which alleged that the hospital "was on notice regarding how data containing health information may be disclosed or used if tracking technologies were embedded on their website" and decided to deploy the technologies with such knowledge, and therefore it "intercepted data to disclose and use that data in violation of HIPAA."); *Jarrett v. Upperline Health, Inc.*, No. 1:23-cv-01261 (S.D. Ind. Aug. 8, 2025) (Doc. No. 24-2) at 26 (sustaining ECPA claims which alleged the hospital's "business arrangement with Facebook reveals its intent to profit commercially from exploiting Private Information, in violation of HIPAA"); *Hartley v. Univ. of Chi. Med. Ctr.*, 2025 U.S. Dist. LEXIS 194466, at *7-15 (N.D. Ill. Oct. 1, 2025) (denying motion to dismiss ECPA claim relating to the undisclosed use of tracking technologies on a medical provider website, even in absence of allegations regarding the use of tracking technologies "within" a patient portal); *I.T. v. Choicepoint LLC*, 2025 U.S. Dist. LEXIS 169202, at *22-25 (W.D. Wash. Aug. 29, 2025) (denying motion to dismiss an ECPA claim relating to the undisclosed use of tracking technologies on a medical provider website, holding instead that "an intent to disclose or use private information in violation of HIPAA is distinct from the interception" and that "information that identifies an individual and relates to a health condition can support the HIPAA crime-tort exception for ECPA liability, regardless of whether a webpage was publicly accessible"); *Juenger v. Deaconess Health Sys., Inc.*, 2025 U.S. Dist. LEXIS 193628, at *25-25 (S.D. Ill. Sept. 30, 2025) (denying motion to dismiss ECPA claim relating to the use of tracking technologies on a hospital's website, accepting the plaintiff's contention that "a disclosure that violates HIPAA is a violation of law that is independent of a violation of the ECPA"); *Smith v. Rack Room Shoes, Inc.*, 2025 U.S. Dist. LEXIS

B.  *Amendment is Not Futile*

Section § 2511(2)(d) of the ECPA, 18 U.S.C. § 2511(2)(d), provides: "It shall not be unlawful under this chapter for a person … to intercept a[n] … electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

The court in *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273 (N.D. Ill. Feb. 21, 2025), a case involving the surreptitious use of tracking technologies on a healthcare provider website, addressed the crime-tort exception, and after carefully considering the ECPA's terms held that "courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA." *Id.* at *11-12 (citing cases). In so ruling, the Court examined how the ECPA uses the word "purpose" in the crime-tort exception, and held that the "act" must criminal or tortious not the "purpose":

> The placement of "criminal or tortious" is telling. That phrase modifies "act," not "purpose." The statute does not require a "criminal or tortious purpose." It requires a purpose of committing an act—an act that is criminal or tortious. A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose…. Congress could have required a showing that the person acted with

---

149750, at *13-14 (N.D. Cal. Aug. 4, 2025) (holding that a defendant's disclosure of personally identifiable information to third parties "in contradiction [to] the commitments it made in its privacy policy…plausibly constitute[s] a further invasion of privacy beyond the act of intercepting the information alone," and "join[ing] the majority [of] courts that have held a monetary purpose does not insulate a party from liability" under the ECPA); *Allen v. Midwest Express Care, Inc.,* 2025 U.S. Dist. LEXIS 151237, at *4-8 (N.D. Ill. Aug. 6, 2025) (upholding ECPA claim, reasoning that patient status and information on health conditions and treatments are HIPAA-protected information, and interceptions of such information support the ECPA's crime-tort exception); *Doe v. Tenet Healthcare Corp.*, 2025 U.S. Dist. LEXIS 109134, at *56-66, 69-70 (E. D. Cal. June 9, 2025) (denying motion to dismiss ECPA claim relating to the use of tracking technologies on a healthcare provider's website, holding that the "'intentional disclosure' of private information constituted a 'further impropriety' independent of and separate from [the] interception' of private information," which supports the application of the crime-tort exception to one-party consent, and "join[ing] [those] courts that have held that a monetary purpose does not insulate a party from liability under the ECPA").

10

>a criminal or tortious purpose…. But that's not what the text says. The "act" must be criminal or tortious, but the "purpose" does not need to be criminal or tortious.

*Id.* at * 15-16. Thus, the prevailing view is that the crime-tort exception is satisfied when defendant hospitals use tracking technologies to intercept patient communications for the purpose of making disclosures that violated HIPAA. *See, e.g.*, *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *13-16 (W.D. Wis. June 28, 2024) (crime-tort exception satisfied where "defendants intercepted patients' electronic communications for the purposes of making disclosures that violated HIPAA"); *Lugo v. Inova Health Care Servs.*, 2025 U.S. Dist. LEXIS 55590, at *16-22 (E.D. Va. Mar. 25, 2025) (following the reasoning of "[c]ourts around the country [that] have permitted the invocation of the ECPA's crime-tort exception when plaintiffs allege violations of HIPAA and other state health privacy laws," particularly where plaintiffs allege "status as medical patients"); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *14 (C.D. Cal. Jan. 13, 2025) ("intent to disclose [HIPAA protected] information" sufficient); *A.J. v. LMND Med. Grp., Inc.*, 2024 U.S. Dist. LEXIS 194480, at *3-4 (N.D. Cal. Oct. 25, 2024) (affirming claim based on purpose to disclose communications HIPAA protects).[2] Both the pending complaint and the Second Amended Complaint meets the pleading standards set forth in these cases.

Recent decisions by Judge Burroughs in the *Tufts Medical Center* case, Magistrate Judge Levenson in the *Lawrence General Hospital* case, and Judge Stearns in the *Cape Cod Hospital* case, have addressed the requirements for pleading the crime-tort exception, but not in a uniform manner. Plaintiff does not agree that those decisions articulate the proper standards and maintains that the operative complaint alleges facts sufficient to meet the pleading under the ECPA. Nevertheless, Plaintiff, in her proposed Second Amended Complaint, adds factual allegations to address the new legal standards articulated by judges in this District. Amendment is not futile.

---

[2] *See also* cases cited in n.1, *supra*.

In *McManus v. Tufts Med. Ctr., Inc.,* the Court held that the crime-tort exception's "purpose" language requires Plaintiff to plausibly allege that committing a criminal or tortious act was Tufts "'primary motivation' or a 'determinative factor' in its decision to intercept health care consumers' communications," although it need not be the "sole" purpose. 2025 U.S. Dist. LEXIS 191546, at *6, *8-9. While the Court held that financial motivations alone are insufficient to satisfy the crime-tort exception, they do not negate its applicability. *Id.* at *8-9, n. 1. "If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies." *Id.* (quotations omitted).

The Court in *McManus* found that the complaint at issue "does not assert facts sufficient to support the inference that Tufts Medical Center intended to commit a criminal or tortious act or that disclosing private medical information to third parties was the 'primary motivation' or a 'determinative factor' in Tufts Medical Center's decision to record health care consumers' communications using various tracking technologies." *Id*. at *7. The Court distinguished the complaint before it from the amended complaint in *Williams v. TMC Health*, which: "In addition to explaining more about how the technology served a separate criminal purpose, Plaintiffs allege Defendant was on notice regarding how data containing health information may be disclosed or used if tracking technologies were embedded on their website. Therefore, they have plausibly alleged Defendant intercepted their information with the purpose of violating HIPAA." *Id*. at *6-7.

In *Doe v. Lawrence General Hospital*, Magistrate Judge Levenson rejected the arguments (a) that the crime-tort exception only applies if the a defendant's "primary motivation" or "determinative factor" for the interception was to commit a criminal or tortious act,  (b) that a defendant's intention to earn profits negates any criminal or tortious purpose, and that (c) the crime-tort exception applied only if the purpose of the interception was to "harm" the recorded party. 2025 U.S. Dist. LEXIS 195964, at *52-56 (D. Mass. Aug. 29, 2025).

Nevertheless, the court recommended dismissal of Plaintiff's ECPA claim on two grounds. First, the Court found that the complaint "contain[ed] no allegation that LGH ever entertained a conscious purpose of disclosing the identities of its patients, or their treatments, to Google or Meta." *Id.* at \*26-32, 43-49. Second, the Report found that any criminal or tortious act was not sufficiently separate from the interception itself. *Id.* at \*33-37. Significantly, with respect to the two issues on which the Report and Recommendation focused, the Court did not conclude Plaintiff's claims are nonviable as a matter of law. It only held that they are inadequately factually alleged.

In a third decision, *Goulart v. Cape Cod Hospital*, Judge Stearns adopted the primary motivation standard, 2025 U.S. Dist. LEXIS 119435, at \*7 (D. Mass. June 24, 2025), but held that Plaintiff failed to allege that the use of the tracking technologies was "for the purpose of committing a criminal violation or tort, as opposed to commercial gain." *Id.* at \*8. Both *McManus* and *Lawrence General Hospital* expressly rejected that view. *McManus* 2025 U.S. Dist. LEXIS 191546, at \*8 n.1 ("This Court does not believe that the issue is so clear-cut, as '[t]he existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive. After all, lots of crimes and torts are money-makers.'") (citation omitted); *Lawrence Gen. Hosp.*, 2025 U.S. Dist. LEXIS 195964, at \*54 ("A purpose to make money, while at times a valid distinction, doesn't hold up to pressure testing. The underlying motivation for many crimes and torts is to make money…. The 'broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong.'").

Although Plaintiff believes that recent decisions in this District (which themselves apply different and inconsistent standards) misconstrued the ECPA's substantive terms, the well-pleaded allegations in the proposed Second Amended Complaint meet and exceed the heightened standards articulated in those decisions.

The substance of Plaintiff's proposed amendments demonstrates that amendment is not futile, given the significant additional allegations. In particular, the amendment Plaintiff proposes principally bolsters allegations on the following issues:

(i) Plaintiff adds detail on how one of the principal functions of the tracking technologies is to facilitate targeted advertising on behalf of the website owner (here, BIDMC), and how BIDMC intercepted communications for the purpose of engaging in criminal and tortious acts—the improper use of sensitive medical communications without obtaining patient consent (in violation of HIPAA and state law) to bolster the effectiveness of its marketing efforts, including targeted advertising through Google's and Facebook's platforms.[3] *See* Ex. A ¶¶ 32, 33, 38-48, 51-58, 72-73, 78, 86-88, 95, 102-104, 106, 108, 110, 114-115, 118, 119, 122, 123, 126, 128, 133, 148, 157, 161, 176.

(ii) Plaintiff explains how BIDMC was on notice regarding how data containing health information can be used if tracking technologies were embedded on its website and expressly warned by Google and Facebook not to use tracking technology on webpages with health information without informed consent.[4] *See* Ex. A ¶¶ 40-42, 43-45, 47, 51, 53-54, 57.

(iii) Plaintiff explains in greater detail how BIDMC, Google's, and Facebook's subsequent uses of the intercepted communications for targeted advertising present criminal and tortious acts separate from the interceptions.[5] *See id.* ¶¶ 2-8, 45-46, 51-56, 58, 94, 104-05, 107, 109-10, 114, 117-18, 121-22, 125, 127, 132-33, 147-48.

---

[3] This contrasts with *Lawrence General Hospital*, where the court concluded "there are no allegations in the Complaint to suggest that LGH's purpose in deploying the web tracking tools was anything other than to gather information that would assist LGH in analyzing the traffic to its website." 2025 U.S. Dist. LEXIS 195964, at *44-45.

[4] This contrasts with *McManus*, where the court concluded there were no allegations that "Defendant was on notice regarding how data containing health information may be disclosed or used if tracking technologies were embedded on their website," as there had been in the Amended Complaint in *Williams v. TMC Health*. 2025 U.S. Dist. LEXIS 191546, at *8.

[5] This contrasts with *Lawrence General Hospital*, where the court concluded there was "There is no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tool." 2025 U.S. Dist. LEXIS 195964, at *37.

(iv)    Plaintiff clarifies allegations in her complaint to show how BIDMC employed tracking technologies on webpages that reveal patient status, including the patient portal landing page, the find a doctor page, the request an appointment page, and the bill payment page, and to confirm that BIDMC intercepted Plaintiff's communications on those specific pages during the class period. *See id.* ¶¶ ¶¶ 3-8, 15-16, 24, 105, 107, 109-10, 115, 117, 125, 127-33, 157-59, 198-99.

"A proposed amendment is 'not deemed futile as long as the ... complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory." *Arana v. Molta*, 2025 U.S. Dist. LEXIS 148664, at *3-4 (D. Mass. Mar. 20, 2025). "Whether a proposed amendment is futile is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Brown v. JetBlue Airways Corp.*, 2025 U.S. Dist. LEXIS 82002, at *5 (D. Mass. Apr. 30, 2025); *see also Arana*, 2025 U.S. Dist. LEXIS 148664, at *3 ("Where, as here, the motion to amend is sought before discovery is complete and neither party has moved for summary judgment, the proposed amendment 'is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'"). The proposed amendment, which adequately pleads sufficient facts to state a claim under the ECPA even under the most rigorous standards, is not futile.

C.    *Plaintiff Has Proceeded in Promptly, Diligently, and in Good Faith*

Further, Plaintiff has proceeded in good faith. Plaintiff submits that her current complaint is sufficient and already contains fact allegations comparable to allegations in similar cases in which courts have upheld claims against hospitals relating to the surreptitious use of tracking technologies on healthcare websites. The proposed amendment, however, responds to very recent decisions by other judges in this District announcing new legal principles that could be applied to similar ECPA cases. It also considers recent decisions from other districts (*TMC Health* and *Upperline Health* in particular), in which courts have upheld further amended complaints after having previously dismissed complaints. These decisions help illuminate what additional factual allegations can be

15

added to address deficiencies courts have identified in other cases. Plaintiff's response to those new legal principles is reasonable, prompt, and made in good faith.

There has been no undue delay or absence of diligence. Although this case was initially filed in the Massachusetts Superior Court over two years ago, no activity took place while it was on appeal in the Supreme Judicial Court. Plaintiff did not assert an ECPA claim until amending her complaint after the SJC's decision; accordingly, the current motion to dismiss is the first time the parties and Court have considered the ECPA claim or the crime-tort exception to one-party consent. *Weinreich v. Brooks*, 340 F.R.D. 57, 59 (D. Mass. 2021) (rejecting arguments for undue delay made against motion for leave to amend where delay "stemmed largely from procedural interruptions and uncertainties beyond [plaintiff's] control," including stay of litigation and transfers among courts).

Moreover, the amendment responds to evolving changes in the law. Magistrate Judge Levenson in *Lawrence General Hospital* recognized there is a range of different "approach[es]" courts have taken to the crime-tort exception. 2025 U.S. Dist. LEXIS 195964, at *21. Amendments made to respond to emerging legal principles governing a claim are proper and timely. *In re Rainforest Cafe, Inc. Sec. Litig.* 1998 U.S. Dist. LEXIS 22457, at *19 (D. Minn. Dec. 21, 1998) (granting leave to amend "[b]ecause of the evolving nature of the pleading requirements" for claim at issue) (citing cases); *Aero. Prods. Int'l, Inc. v. FWF, Inc.*, 2009 U.S. Dist. LEXIS 89818, at *3-4 (W.D. Tenn. Sep. 29, 2009) ("Recent developments in the law surrounding the…claim [asserted] provide [the plaintiff] with a basis to seek [an] amendment to the complaint"); *Bangalore v. Froedert Health, Inc.*, 2024 U.S. Dist. LEXIS 41914, at *24-26 (E.D. Wis. Mar. 11, 2024) (granting leave to amend where "the standard for pleading ERISA breach of fiduciary duty claims has shifted," and amendments responded to such emerging law).

Finally, this case remains at the early pleading stage. Discovery has not commenced. No case schedule has been set, and Plaintiff is not attempting to amend after any court-ordered deadline. Moreover, Plaintiff's diligence must be considered against the legal backdrop of a rapidly developing

area of law. Plaintiff has moved to amend shortly after several judges in the District adopted interpretations of the ECPA crime-tort exception that would be new in this District, and which differ from approaches taken by other courts.

## V.     CONCLUSION.

The Court should grant Plaintiff leave to file the attached [Proposed] Second Amended Complaint.

Dated: October 10, 2025                                  Respectfully submitted,

*/s/Patrick J. Vallely*
SHAPIRO HABER & URMY LLP
Edward F. Haber (BBO #215620)
Michelle H. Blauner (BBO #549049)
Patrick J. Vallely (BBO #663866)
One Boston Place
Suite 2600
Boston, MA 02108
(617) 439-3939 – Telephone
(617) 439-0134 – Facsimile
ehaber@shulaw.com
mblauner@shulaw.com
pvallely@shulaw.com

**Counsel for Plaintiff**

## **CERTIFICATE OF SERVICE**

    I hereby certify that the above and foregoing pleading was filed electronically through the Court's electronic filing system and that notice of this filing will be sent to all counsel of record in this matter by operation of the Court's ECF system.

Dated: October 10, 2025

                                                                     */s/Patrick J. Vallely*
                                                                      Patrick J. Vallely