**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| KATHLEEN VITA, *For herself and the Class*,  Plaintiff,  v.  BETH ISRAEL DEACONESS MEDICAL CENTER, INC.,  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:25-cv-11383-JEK |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**KOBICK, J.**

Plaintiff Kathleen Vita brings this putative class action lawsuit against defendant Beth Israel Deaconess Medical Center, Inc. ("BIDMC") for disclosing her private medical information, and the private medical information of other users of its website, without their consent. The operative complaint alleges that BIDMC installed technology on its public website to intercept its users' communications and, without authorization, transmit confidential information from those communications to Meta Platforms, Inc. and Google LLC. While not a patient of BIDMC, Vita claims that, using this technology, BIDMC shared confidential medical information about her search for providers and treatment with Meta and Google. Pending before the Court is BIDMC's motion to dismiss for failure to state a claim. For the reasons that follow, the motion will be granted in part and denied in part. Vita states plausible claims for a violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*, invasion of privacy, breach of fiduciary duty, negligence, breach of implied contract, and unjust enrichment. BIDMC makes no meaningful effort to distinguish this action from other cases, even though Vita, unlike the plaintiffs in those

cases, is not a patient of the defendant provider or hospital. Her breach of confidence claim will, however, be dismissed because Massachusetts law does not recognize such a claim in this context.

## BACKGROUND

The following facts, drawn from the second amended complaint, are accepted as true for purposes of BIDMC's motion to dismiss.

BIDMC provides inpatient and outpatient care to patients in and around Boston, Massachusetts, where its main campus is located. ECF 33, ¶¶ 19, 21. It maintains a website at www.bidmc.org. *Id.* ¶¶ 2, 19, 22. This website permits people to obtain information about BIDMC's doctors, services, and procedures for particular medical conditions. *Id.* ¶ 22. The website contains pages for specific medical services, as well as a "Find a Doctor" feature to search for physicians based on their specialty and location. *Id.* ¶ 23. It also allows patients to pay their bills online and, through the PatientSite portal, access their medical information. *Id.* BIDMC's Privacy Policy—which applies to users of its website, not just patients—states that it "is committed to protecting [users'] privacy," and that its "website allows [users] to visit most areas without identifying [themselves] or providing personal information." *Id.* ¶¶ 30-31 (quotation marks omitted). The policy discloses that BIDMC "routinely gathers data on website activity, such as how many people visit the site, the pages they visit, where they come from, [and] how long they stay." *Id.* ¶ 32. But it then states that this "data is collected on an aggregate, anonymous basis, which means no personally identifiable information is associated with the data," and that BIDMC "will not share any information [it] receive[s] with any outside parties" or "other organizations," "[e]xcept for authorized law enforcement investigations or other facially valid legal processes." *Id.* (quotation marks and emphases omitted).

Despite these assurances of confidentiality, BIDMC allegedly chose to share the non-anonymized content of its website users' communications with Meta and Google, without their consent, by intentionally installing tracking technology on its website. *Id.* ¶¶ 2-3, 31-32, 34. BIDMC purportedly did so for marketing purposes, including to promote targeted advertising. *See, e.g.*, *id.* ¶¶ 31, 34. Specifically, BIDMC used Meta Pixel on its website until September 2022. *Id.* ¶¶ 77-78. This technology "allows website owners to track users across their website and to optimize Facebook advertising based on how they use the websites." *Id.* ¶ 39. Meta Pixel transmits the URL and the users' IP address to Meta, which can associate that data with a user's individual Facebook profile. *Id.* ¶¶ 93-94. Until February 2023, BIDMC's website also used Google Analytics, which similarly permits businesses to "run more data-driven advertisements" by "analyzing different groups of users and . . . exporting the [website] data to advertising platforms." *Id.* ¶¶ 53, 78 (quotation marks omitted). The technology transmits to Google, among other data, the URL a user visited, the webpage title, and a unique identifier for the user. *Id.* ¶¶ 84-85, 100-01, 112, 116.

Google and Meta both directed website owners to disclose to their users how information would be collected and processed. *Id.* ¶¶ 8, 47, 57. Meta also warned businesses not to use the technology on websites "that includ[e] health . . . information." *Id.* ¶ 47 (quotation marks omitted). Nevertheless, through its use of Meta Pixel and Google Analytics, BIDMC disclosed to Meta and Google individualized information about its website users' communications, including their patient status, searches for doctors or medical treatment, bill payments, the identities of their physicians, and medical records on the patient portal. *Id.* ¶¶ 6, 70, 157. These disclosures were made without website users' knowledge or consent. *Id.* ¶¶ 6, 8.

3

Vita is not a patient of BIDMC, but her husband is a BIDMC patient. *Id.* ¶ 15. She has "regularly" entered communications and queries on BIDMC's public website to research its doctors, obtain information about specific medical procedures for herself and her husband, and access her husband's private medical records through the patient portal. *Id.* ¶¶ 15, 133. BIDMC allegedly disclosed to Meta and Google information about Vita's search for particular providers and treatments and her use of the patient portal for her husband without her consent. *Id.* ¶¶ 6, 15-16, 18.

Vita initiated this action in Suffolk Superior Court in February 2023, asserting a single claim under the Massachusetts Wiretap Act, M.G.L. c. 272, § 99. ECF 1, ¶ 1; ECF 1-3, at 2. After the Supreme Judicial Court ("SJC") held in *Vita v. New England Baptist Hospital*, 494 Mass. 824 (2024), that BIDMC's conduct was not prohibited by that statute, Vita filed an amended complaint in April 2025 to add a claim under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, and several state-law claims. ECF 1, ¶¶ 1-2, 5. Invoking federal question jurisdiction under 28 U.S.C. § 1331, BIDMC then removed the case to this Court in May 2025. *Id.* ¶¶ 10-11. With the Court's leave, Vita filed a second amended complaint in November 2025. ECF 32, 33. That operative complaint asserts the following claims: a violation of the ECPA (Count I); invasion of privacy in violation of M.G.L. c. 214, § 1B (Count II); breach of fiduciary duty (Count III); negligence (Count IV); breach of confidence (Count V); breach of contract (Count VI); and unjust enrichment (Count VII). ECF 33, ¶¶ 193-270. Vita seeks to represent a class of Massachusetts residents who similarly accessed BIDMC's website "between three years prior to" February 24, 2023, when she filed the initial complaint, "and the date BIDMC removed from [its] Website the tracking technologies." *Id.* ¶ 185; *see* ECF 1-3, at 2.

4

In January 2026, BIDMC moved to dismiss for failure to state a claim. ECF 39. Following briefing on that motion, the Court held a hearing and took the motion under advisement. ECF 41, 42, 45.[1]

## STANDARD OF REVIEW

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

## DISCUSSION

I.      **Invasion of Privacy.**

The Court begins with Count II, which asserts that BIDMC violated Vita's privacy rights under M.G.L. c. 214, § 1B by unreasonably disclosing confidential medical information to Meta

---

[1] BIDMC references in its motion and attaches to its reply brief three amicus briefs filed in *Goulart v. Cape Cod Healthcare, Inc.*, No. 25-1672 (1st Cir.). *See* ECF 40, at 1 n.2; ECF 42, at 2 n.4; ECF 42-1; ECF 42-2; ECF 42-3. Those briefs will not be considered because "attorneys cannot circumvent the page limit of [Local Rule 7.1(b)(4)] by incorporating by reference . . . brief[s] filed in another forum" and must instead rely on arguments made "within the four corners of the brief[s] filed in this court." *Exec. Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 67-68 (1st Cir. 1995) (quotation marks omitted).

and Google without her knowledge or informed consent.[2] Section 1B prohibits interferences with privacy that are "unreasonable, substantial or serious." M.G.L. c. 214, § 1B. To sustain a Section 1B claim, Vita must plausibly allege an invasion of her privacy that is "'both unreasonable and substantial or serious.'" *Ortiz v. Examworks, Inc.*, 470 Mass. 784, 793 (2015) (quoting *Nelson v. Salem State Coll.*, 446 Mass. 525, 536 (2006)). This standard is met when the disclosure involves "'facts about an individual that are of a highly personal or intimate nature when there exists no legitimate countervailing interest.'" *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 383 (2005) (quoting *Bratt v. Int'l Bus. Machines Corp.*, 392 Mass. 508, 518 (1984)). In certain situations, however, "legitimate countervailing business interests . . . may render the disclosure of personal information reasonable and not actionable under the statute." *Bratt*, 392 Mass. at 520. "Generally, whether an intrusion qualifies as unreasonable, as well as either substantial or serious, presents a question of fact." *Polay v. McMahon*, 468 Mass. 379, 383 (2014).

BIDMC contends that the information it allegedly shared with Meta and Google was not a substantial or serious invasion of privacy because that information was not of a highly personal or intimate nature. Vita alleges that her husband is a patient at BIDMC and that she has "regularly used" its website, including the patient portal, "to (i) obtain information about particular BIDMC doctors (including their credentials and backgrounds); (ii) search for information on particular symptoms, conditions, and medical procedures, both for herself and her husband; and (iii) obtain and review her husband's medical records." ECF 33, ¶¶ 15, 133. Massachusetts courts have repeatedly declined to dismiss Section 1B claims asserted by patients premised on comparable invasions of privacy. *See, e.g.*, *Doe v. Baystate Health Sys., Inc.*, No. 25-cv-10337-JEK, 2026 WL

---

[2] Vita advances two theories of liability: "public disclosure of private facts and intrusion upon seclusion." ECF 33, ¶ 217. The Court does not address the latter theory because, as will be explained, she states a viable public disclosure claim.

776861, at *3 (D. Mass. Mar. 19, 2026) (denying motion to dismiss such a claim where plaintiff's provider allegedly disclosed her "communications about cancer screenings and medical providers, her status as a patient, and her scheduling of a mammogram"); *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 151-52 (D. Mass. 2024) (same because "the health information that was allegedly disclosed to Facebook (e.g., Plaintiff's identity, patient status, request for medical treatment, health conditions and treatments, and appointment time and location) constitute[d] information of a 'highly personal or intimate nature'"); *Doe v. Emerson Hosp.*, No. 2277-cv-1000, 2023 WL 8869624, at *5 (Mass. Super. Nov. 22, 2023) (same where defendant allegedly disclosed "information about Plaintiff's status as [its] patient" and "about treating doctors, potential doctors, conditions, treatments, appointments, search terms, [and] bill payment"); *Doe v. Boston Med. Ctr. Corp.*, No. 2384-cv-326-BLS-1, 2023 WL 7105628, at *5 (Mass. Super. Sep. 14, 2023) (same where plaintiff "alleged disclosure of personal and healthcare-related information over multiple website visits for the sole purpose of targeted advertising efforts").

Despite noting in the background section of its brief that Vita is not its patient, BIDMC makes no effort to distinguish those cases on that ground and instead characterizes them as "parallel cases." ECF 40, at 7, 27-28 & n.75; *see Tower v. Hirschhorn*, 397 Mass. 581, 586-88 (1986) (finding invasion of privacy where "confidential medical information" was disclosed "to two individuals" "without the consent of the patient"). BIDMC has, accordingly, waived at this stage any argument that these cases are factually distinct because Vita, unlike the plaintiffs in those cases, is not a patient. *See Ramos-Ramos v. Jordán-Conde*, 171 F.4th 438, 443 (1st Cir. 2026) (deeming waived "off-hand references" from the briefs' summary of the procedural history and complaint that were "unaccompanied by [any] effort at developed argumentation" (quotation marks omitted)). Based on this precedent, Vita's communications about her search for providers

7

and specific medical procedures for herself constitute medical information of a highly intimate or personal nature under Section 1B.

Relying on Vita's repeated allegation that BIDMC disclosed communications for marketing purposes, including to promote targeted advertising, *see, e.g.*, ECF 33, ¶¶ 31, 34, 133, 219, BIDMC next argues that it had a legitimate interest in sharing Vita's confidential medical information with Google and Meta. But under Massachusetts law, whether marketing and advertising are legitimate purposes that outweigh intrusions on Vita's privacy interests is "a question of fact not suitable for resolution on a motion to dismiss." *Polay*, 468 Mass. at 384. Vita has therefore adequately alleged an invasion of privacy claim under Section 1B.

## II.    Electronic Communications Privacy Act.

Count I asserts that BIDMC violated the ECPA through its unauthorized disclosures of Vita's confidential medical information from her communications on its website. The ECPA "provides a private right of action against one who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.'" *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003) (quoting 18 U.S.C. § 2511(1)(a) and citing 18 U.S.C. § 2520). Under the statute, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). To state a claim under the ECPA, Vita must allege that BIDMC "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device," *In re Pharmatrak*, 329 F.3d at 18, and (6) that the

8

communication was "intercepted contemporaneously," *Boudreau v. Lussier*, 901 F.3d 65, 78 (1st Cir. 2018).

Under the ECPA, it is not unlawful for a person "to intercept a . . . communication where such person is a party to the communication." 18 U.S.C. § 2511(2)(d). All agree that BIDMC was a party to the communications at issue in this case. But this one-party consent rule has an exception, known as the crime-tort exception, which applies when communications are "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* Vita relies on this exception in seeking to hold BIDMC liable under the ECPA. The parties agree that, to invoke the crime-tort exception, Vita "must plead sufficient facts to support an inference that [BIDMC] intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *accord Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022); *Fisher v. Perron*, 30 F.4th 289, 298-300 (6th Cir. 2022); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015); *see* ECF 40, at 17; ECF 41, at 13-14.

Vita plausibly alleges that BIDMC intentionally intercepted her communications on its website for the purpose of committing a tortious act in violation of M.G.L. c. 214, § 1B. According to the second amended complaint,[3] BIDMC, through its Privacy Policy, affirmatively misled Vita

---

[3] BIDMC contends that Vita cannot rely on this complaint because it contradicts her allegations made in the amended complaint that BIDMC merely aided and abetted the interceptions of Google and Meta. *See* ECF 1-22, ¶¶ 2-4. But that prior complaint also alleged that BIDMC itself "implemented tracking technologies that intercepted communications" by, for example, "configur[ing] its website to intercept," and "caus[ing] the user's browser to intercept," those communications. *Id.* ¶¶ 13, 62, 77. Because the second amended complaint similarly alleges that BIDMC—not Google or Meta—was the intercepting party, no contradiction exists. Vita will not therefore be bound by her alternative aiding and abetting theory of liability under the ECPA.

by promising that the data on its website was "collected on an aggregate, anonymous basis, which means no personally identifiable information [would be] associated with the data," and that it would "not share any information [it] receive[d] with any outside parties" "[e]xcept for authorized law enforcement investigations or other facially valid legal processes." ECF 33, ¶ 32 (quotation marks and emphases omitted); *see id.* ¶¶ 7, 257. Despite these assurances of privacy, BIDMC allegedly transmitted her confidential information—including information about her search for treatments and providers—to Meta and Google without her authorization. *Id.* ¶ 199. Vita's theory is that BIDMC decided, based on a cost-benefit analysis, not to tell users of its website, including patients, the truth in its Privacy Policy in order to encourage them to submit their private health information, which it, in turn, disclosed to third parties for "its own financial self-interest in maximizing the effectiveness of its online marketing." *Id.* ¶¶ 13, 205; *see id.* ¶¶ 3, 5, 7, 46, 56, 137. At this early juncture, these allegations are sufficient to support the plausible inference that BIDMC intercepted Vita's communications on its website "'for the purpose of facilitating some further impropriety'"—namely, violating Section 1B by disclosing Vita's private health information without her consent. *Planned Parenthood*, 51 F.4th at 1135-36 (quoting *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999)); *accord Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971).[4]

Vita's allegations that BIDMC installed the tracking technologies from Meta and Google on its website for "marketing purposes, including targeted advertising," and "commercial gain" do not change this conclusion. ECF 33, ¶¶ 5, 31, 107, 109-10, 114, 118, 127; *see also id.* ¶¶ 202, 209. That is so because "the existence of a lawful purpose does not mean that the interception is not

---

[4] In light of the alleged violation of M.G.L. c. 214, § 1B, the Court need not consider whether BIDMC also acted with the intent to violate the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") or the Federal Trade Commission Act. *See* ECF 33, ¶ 204.

also for a tortious or unlawful purpose." *Sussman*, 186 F.3d at 1202; *see Doe v. Lawrence Gen. Hosp.*, No. 25-cv-10081-NMG, 2025 WL 2808055, at *20 (D. Mass. Aug. 29, 2025) ("The broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong." (quotation marks omitted)), *report and recommendation adopted in part, rejected in part*, 2025 WL 2807673 (D. Mass. Sept. 30, 2025); *McManus v. Tufts Med. Ctr., Inc.*, No. 25-cv-10008-ADB, 2025 WL 2778025, at *3 n.1 (D. Mass. Sept. 29, 2025) ("the defendant's alleged financial motivation does not necessarily defeat the application of the crime-tort exception"); *Progin v. UMass Mem'l Health Care, Inc.*, No. 25-cv-40003-ADB, 2026 WL 632770, at *4 n.1 (D. Mass. Mar. 6, 2026) ("Defendants' business-related motives . . . do not negate the purpose requirement."). A party seeking to invoke the crime-tort exception must show "either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act." *United States v. Cassiere*, 4 F.3d 1006, 1021 (1st Cir. 1993) (quotation marks omitted). Whether BIDMC was primarily or determinatively motivated to intercept and share Vita's communications with Meta and Google for a lawful purpose (marketing and financial gain), an unlawful purpose (violating M.G.L. c. 214, § 1B), or both is a question of fact not fit for resolution at the pleading stage. *See id.*[5] Viewed in the light most favorable to Vita, the second amended complaint

---

[5] Pointing to *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263 (1st Cir. 2022), BIDMC posits that its lawful marketing purpose is an "obvious alternative explanation." ECF 40, at 21 (quotation marks omitted). In *Frith*, the First Circuit held that plaintiffs' Title VII discrimination claims alleging that "Whole Foods' prohibition on employees' displaying the Black Lives Matter message in their stores was a pretext for racially discriminating against the individual employees" were not plausible in light of the "'obvious alternative explanation' . . . that Whole Foods wanted to prohibit the mass display of a controversial message in its stores by its employees." 38 F.4th at 276. BIDMC's reliance on *Frith* is misplaced. Unlike in that employment discrimination case, the First Circuit observed in an ECPA action specifically that determining a party's motivations involved a "factual finding." *Cassiere*, 4 F.3d at 1021.

sufficiently alleges that BIDMC acted with the purpose of committing a tortious act in violation of Section 1B.

Vita also adequately alleges that BIDMC's tortious purpose was separate and independent from the act of the recording. *See Caro*, 618 F.3d at 100-01 (the crime-tort exception "requires that the interceptor intend to commit a crime or tort independent of the act of recording itself," in part because the ECPA's "language and history . . . indicate that Congress authored the exception . . . to prevent abuses stemming from *use* of the recording not the mere *act* of recording").[6] Certain courts have held that the common law privacy claim of intrusion upon seclusion cannot satisfy the ECPA's tortious intent requirement because "'it is a tort that occurs through the act of interception itself.'" *In re Google*, 806 F.3d at 145 (quoting *Caro*, 618 F.3d at 101); *see In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 (3d Cir. 2016) (applying the "reasoning in *Google*" to affirm dismissal of an ECPA claim alleging that "the defendants' use of cookies amounted to the common law tort of intrusion upon seclusion"); *Weston v. Lefiti*, No. 24-541, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (affirming dismissal of ECPA claim where plaintiff's "invasion of privacy . . . argumen[t] stem[med] from the mere act of recording"). Other invasion of privacy claims, however, may satisfy this exception, as they require "the tortfeasor . . . to take an affirmative step or steps beyond the recording" itself. *Caro*, 618 F.3d at 101 (applying Connecticut law); *see Phillips v. Bell*, 365 F. App'x 133, 142 (10th Cir. 2010) (reversing denial of motion to dismiss ECPA claim where there were "no additional factual allegations to support [plaintiff's] contention" that recordings of her conversations were made "to invade her privacy").

---

[6] While the First Circuit has not adopted this test, other sessions of this Court have employed it. *See Goulart v. Cape Cod Healthcare, Inc.*, No. 25-cv-10445-RGS, 2025 WL 1745732, at *3 & *4 n.3 (D. Mass. June 24, 2025), *appeal docketed*, No. 25-1672 (July 23, 2025); *Lawrence Gen. Hosp.*, 2025 WL 2808055, at *12-14.

Here, Vita alleges that BIDMC acted with the purpose of violating M.G.L. c. 214, § 1B when it intercepted her communications containing confidential medical information. ECF 33, ¶¶ 13, 214. This alleged violation of Section 1B did not "'occu[r] through the act of interception,'" but rather through BIDMC's "*use* of the acquired internet" communications from Vita that it disclosed to Meta and Google. *In re Google*, 806 F.3d at 145 (quoting *Caro*, 618 F.3d at 101). Vita's invasion of privacy claim is based in part on BIDMC's intent to disclose confidential medical information to Meta and Google without her consent, not merely its intent to intercept her communications. *Tower*, 397 Mass. at 586-87. Put otherwise, BIDMC's alleged intent to *intercept* Vita's communications was, as alleged, independent of its plan to *disclose* those communications to third parties. *See Caro*, 618 F.3d at 100 (if "the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists" under the ECPA); *R.S. v. Prime Healthcare Servs., Inc.*, No. 24-cv-330-ODW-SPX, 2025 WL 103488, at *6 (C.D. Cal. Jan. 13, 2025) ("[T]he intent to disclose private information . . . is distinct from the interception itself."). Since Vita's factual allegations support the plausible inference that BIDMC intercepted her communications for the purpose of committing a tortious act separate from the interception itself, the crime-tort exception under 18 U.S.C. § 2511(2)(d) applies.

Beyond the crime-tort exception, BIDMC contends that its website's use of Meta Pixel and Google Analytics does not constitute a "device" under the ECPA. The statute defines "device" to exclude, in pertinent part, "any telephone or telegraph instrument, equipment or facility . . . being used by a provider of wire or electronic communication service in the ordinary course of its business." 18 U.S.C. § 2510(5)(a)(ii). While the phrase "ordinary course of business" is not defined in the ECPA, the First Circuit has held that the use must be part of the provider's "routine" practice. *United States v. Lewis*, 406 F.3d 11, 19 (1st Cir. 2005); *Campiti v. Walonis*, 611 F.2d 387, 392 (1st

13

Cir. 1979); *see Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001) (collecting cases holding that the phrase "generally requires that the use be (1) for a legitimate business purpose, (2) routine and (3) with notice").

In BIDMC's view, it, like many other hospitals, employed the tracking technologies "in the ordinary course" of its business.[7] But whether those technologies fall within this exclusion is an affirmative defense that must be "clear on the face of [Vita's] pleadings." *Santana-Castro v. Toledo-Dávila*, 579 F.3d 109, 113-14 (1st Cir. 2009) (quotation marks omitted); *see Walden v. City of Providence, R.I.*, 596 F.3d 38, 61 (1st Cir. 2010) (characterizing comparable business-use exception in Rhode Island's "equivalent" wiretap act as a "defense"). The sole allegation cited by BIDMC to support its position is that it "put its business interests over the privacy of its patients." ECF 33, ¶ 5; *see* ECF 40, at 22 n.60. This allegation does not suggest that BIDMC's use of Meta Pixel and Google Analytics was routine. Vita alleges, to the contrary, that these technologies were not needed to run BIDMC's website and that BIDMC had no legitimate reason to falsely promise privacy and then, without notice, share users' private medical information with Meta and Google. ECF 33, ¶¶ 135, 137; *see Adams*, 250 F.3d at 984 (not applying exception where "plaintiff was not given any notice that his pager was being monitored"); *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 741-42 (4th Cir. 1994) (same where "no business reason [was] asserted for the decision not to notify all . . . employees of the use of the voice logger"). BIDMC's Privacy Policy also reflects

---

[7] The Court declines to take judicial notice of other entities' public websites and privacy policies identified by BIDMC, including from this Court and the Massachusetts Department of Public Health's Bureau of Substance Addiction Services. *See* ECF 42, at 11. Those websites and policies have no bearing on whether Vita alleges a plausible entitlement to relief against BIDMC. Nor does BIDMC meaningfully justify their consideration at the pleading stage. *See Douglas v. Hirshon*, 63 F.4th 49, 58 (1st Cir. 2023) (finding "no abuse of discretion in the district court's refusal to consider the attachments" because "plaintiffs did not articulate to the district court any reason why it could or should consider the attachments in ruling on the motion to dismiss").

that, in the ordinary course of business, BIDMC generally would "not share [such] information . . . with any outside parties." ECF 33, ¶ 32 (quotation marks and emphasis omitted); *see Berry v. Funk*, 146 F.3d 1003, 1009-10 (D.C. Cir. 1998) (exception not applicable because defendant's "position [was] fatally undermined by [its] guidelines . . . which must be regarded as the ordinary course of business"). The second amended complaint cannot, accordingly, be said to "leave no doubt" that Vita's ECPA claim is barred by the business-use exception. *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001) (quotation marks omitted).[8]

BIDMC further argues that its alleged disclosures to Google and Meta do not qualify as "contents" under the ECPA. The statute defines "contents" as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). This broad "definition encompasses personally identifiable information such as a party's name, date of birth, and medical condition." *In re Pharmatrak*, 329 F.3d at 18. Congress explained that "'the communication to be protected [was] intended to be comprehensive'" and cover "'the identity of the parties, the substance of the communication between them, [and] the fact of the communication itself.'" *Gelbard v. United States*, 408 U.S. 41, 51 n.10 (1972) (citation omitted). In BIDMC's telling, Vita fails to allege that it disclosed any of her confidential information because merely browsing on its public website "cannot identify an individual or the individual's" private health information. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 802-03 (N.D. Tex. 2024). This position ignores Vita's factual allegations, which describe her specific information that BIDMC allegedly disclosed. *See, e.g.*, ECF 33, ¶ 199; *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 23-cv-1159-TL,

---

[8] BIDMC relatedly argues that Vita's ECPA theory would lead to absurd results by placing hospitals at risk of potentially millions of dollars in liability for using Meta Pixel or Google Analytics. But her theory does not prohibit hospitals from employing those technologies altogether—only doing so without disclosing their use, as Google and Meta have recommended to website owners. *See* ECF 33, ¶¶ 47, 57, 137.

2025 WL 692097, at *5-6 (W.D. Wash. Mar. 4, 2025) (distinguishing *Becerra* where plaintiff alleged that she "sought and received medical treatment from Defendant," which disclosed her "specific identity through her Facebook ID").

Vita alleges that BIDMC disclosed to Meta and Google, among other things, its website users' "requests for information on particular conditions and treatments, keyword searches, doctor searches, appointment requests, bill payments, and access to the website's patient portal." ECF 33, ¶ 6. BIDMC also allegedly shared Vita's searches for providers and specific medical procedures. *Id.* ¶¶ 15-16. These factual allegations are sufficient to treat Vita's intercepted private health information and personal identifiers as "contents" for purposes of the ECPA. *See Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausibly conveyed content: their [protected health information].").[9] Accordingly, Vita's ECPA claim will not be dismissed. *See Baystate Health*, 2026 WL 776861, at *3-5 (declining to dismiss similar claim); *Doe v. Children's Hosp. Corp.*, No. 25-cv-10343-PBS, 2026 WL 1893758, at *2 (D. Mass. July 1, 2026) (same).

## III.    <u>Breach of Fiduciary Duty.</u>

Count III asserts that BIDMC breached its fiduciary duty to Vita by disclosing her confidential medical information to Meta and Google without her authorization. "'To establish a breach of fiduciary duty, there must be a duty owed to the plaintiff by the defendant and injury to the plaintiff proximately caused by the breach.'" *Hornibrook v. Richard*, 488 Mass. 74, 81 (2021) (quoting *Estate of Moulton v. Puopolo*, 467 Mass. 478, 492 (2014)). The SJC has "recognized that

---

[9] BIDMC fails to identify any "grievous ambiguity" in the crime-tort exception specifically or the ECPA generally that warrants application of the rule of lenity. *See United States v. Councilman*, 418 F.3d 67, 83-84 (1st Cir. 2005) (declining to apply the rule to another provision of the ECPA).

the physician-patient relationship possesses fiduciary . . . aspects" and has held that "a duty of confidentiality arises from the physician-patient relationship." *Alberts v. Devine*, 395 Mass. 59, 69 (1985) (citing *Warsofskyv. Sherman*, 326 Mass. 290, 292 (1950)). "Patient confidentiality 'is a cardinal rule of the medical profession,'" and "[d]isclosure of confidential medical information, in violation of that professional duty, can constitute an actionable tort." *Commonwealth v. Brandwein*, 435 Mass. 623, 629-30 (2002) (quoting *Alberts*, 395 Mass. at 66).

BIDMC contends that as a hospital, unlike a physician, it does not owe a fiduciary duty to patients. As part of "the medical profession," however, hospitals have a "professional duty" not to disclose patients' private health information without their consent. *Id.* (quotation marks omitted). Massachusetts courts have repeatedly recognized a fiduciary relationship between hospitals and patients. *See Baystate Health*, 2026 WL 776861, at *6; *Tenet Healthcare*, 731 F. Supp. 3d at 151 ("a fiduciary relationship exists between healthcare providers and patients"); *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 161 (D. Mass. 2024) (plaintiffs "plausibly alleged that because [defendant] provided them healthcare, it was their fiduciary."); *Emerson Hospital*, 2023 WL 8869624, at *3 (rejecting argument as premature that "a fiduciary relationship cannot exist between a health system (as opposed to a specific doctor) and a patient"); *Shedd v. Sturdy Mem'l Hosp., Inc.*, No. 2173-cv-498-C, 2022 WL 1102524, at *9 (Mass. Super. Apr. 5, 2022) (similar). BIDMC acknowledges these cases but contends that they lack appellate support. ECF 40, at 29 & n.82. Under SJC precedent, however, such a fiduciary relationship exists because patients place their "faith, confidence, and trust" in a hospital and are therefore dependent on the hospital's commitment to protect their confidential information. *UBS Fin. Servs., Inc. v. Aliberti*, 483 Mass. 396, 408 (2019) (quotation marks omitted).

17

BIDMC fails to meaningfully argue that these Massachusetts court decisions are inapposite because Vita, unlike the plaintiffs there, is not a patient. In its reply, BIDMC does note that the plaintiffs in *Shields* were only patients. ECF 42, at 14. Rather than distinguish the case on that ground, however, BIDMC merely contends that this Court in *Shields* misapplied SJC precedent. In a footnote, BIDMC also takes issue with Vita's effort to represent all Massachusetts residents, not just patients, who used its website. *See id.* at 14 n.41. And it is only in this context that BIDMC highlights that Vita is not its patient. But BIDMC's concern "regarding the appropriate contours of the putative class" can be addressed at the class certification stage when the Court is permitted to consider the parties' evidentiary submissions and "redefin[e] the class . . . or creat[e] subclasses." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013). Any argument that this action is distinct from the cited cases because Vita is not a patient of BIDMC is therefore deemed waived at this juncture. *See Mongue v. Wheatleigh Corp.*, 165 F.4th 49, 58 (1st Cir. 2026) ("point is likely waived given the perfunctory presentation of this argument").

Proceeding to the merits, Vita alleges sufficient facts to plausibly infer the existence of a fiduciary relationship between herself and BIDMC. Fiduciary duties arise either "as a matter of law, where parties to the subject relationship are cast in archetypal roles," or "as determined by the facts," where "one person is in fact dependent on another's judgment in business affairs or property matters." *UBS Fin. Servs.*, 483 Mass. at 406 (quotation marks omitted). No such relationship appears to exist by operation of law because she, unlike her husband, is not a patient at BIDMC. *Cf. Cleary v. Cleary*, 427 Mass. 286, 292 (1998) ("Ordinarily, family relations do not suffice to create a fiduciary relationship[.]"). But Vita has alleged "sufficient facts to plausibly suggest the existence of a fiduciary duty." *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 842 (2017) (reversing dismissal of breach of fiduciary duty claim). She

18

allegedly placed her "trust and confidence" in BIDMC and expected it to protect her confidential medical information. *UBS Fin. Servs.*, 483 Mass. at 406 (quotation marks omitted); *see* ECF 33, ¶¶ 227, 229. That is so in part because BIDMC promised users of its website that "personally identifiable information" would be disclosed only "for authorized law enforcement investigations or other facially valid legal processes." ECF 33, ¶ 32 (quotation marks and emphases omitted). Indeed, in this very case, the SJC "emphasize[d] that the Legislature has provided . . . common-law causes of action," including "claims for . . . breach of fiduciary duty," that are "applicable to . . . misuse of private medical information." *Vita*, 494 Mass. at 849-50 (citing *Tenet Healthcare*, 731 F. Supp. at 142).

As BIDMC sees it, Vita still fails to allege a breach of that duty or damages causally connected to such a breach. This position is belied by Vita's factual allegations. As pled, BIDMC breached its fiduciary duty to Vita through its "secret and unauthorized disclosures" to Google and Meta of her private medical information, including her searches for providers and specific medical procedures. ECF 33, ¶¶ 6, 15-16, 157-58, 199, 232; *see In re Shields*, 721 F. Supp. 3d at 165 (plaintiffs' "healthcare provider" allegedly breached its "fiduciary duty to protect their private information" where it "required them to provide private information and represented it would '[m]aintain the privacy of [their] health information as required by law'" but failed to do so (citation omitted)). Vita also alleges injuries, which include the unauthorized transmission of her "confidential information," the receipt of "unwanted targeted advertisements based upon the improperly intercepted and disclosed" medical information, a "loss of the benefit of the bargain" in not obtaining compensation for BIDMC's use of that information, and a reduction in the "substantial value" of such information. ECF 33, ¶¶ 10, 180, 184. Vita requests, as a result, "compensatory damages" to account for these injuries. *Id.* ¶ 233. Taken together, Vita's allegations

sufficiently state a breach of fiduciary duty claim against BIDMC. *See Tenet Healthcare*, 731 F. Supp. 3d at 149, 151 (denying motion to dismiss such a claim where plaintiff was allegedly injured by defendant provider's unauthorized disclosure of "her identity, patient status, and her health conditions and treatments"); *Emerson Hosp.*, 2023 WL 8869624, at *3 (same where defendant provider allegedly disclosed information about plaintiff's "medical treatment to third parties without [his] knowledge, consent, or authorization," including about his patient status and potential physicians (quotation marks omitted)).

## IV.    Negligence.

Count IV alleges that BIDMC acted negligently by disclosing Vita's medical information to third parties without her authorization. To sustain this claim, Vita must plausibly allege that (1) BIDMC "owes [her] a duty of reasonable care," (2) it "committed a breach of that duty," (3) she "suffered damage," and (4) "a causal relationship existed between the breach of duty and the damage." *Heath-Latson v. Styller*, 487 Mass. 581, 584 (2021). BIDMC argues that none of these four elements is met. The Court disagrees.

Vita states a plausible claim of negligence. She alleges that BIDMC owed her a duty "to exercise reasonable care to secure, safeguard, and protect [her] highly sensitive Private Information" because of its collection of such information and its "special relationship" with her, given its express promises to do so. ECF 33, ¶¶ 235, 237-38. Indeed, the SJC has explained that "[i]n Massachusetts, the Legislature has demonstrated its recognition of a policy favoring confidentiality of medical facts by enacting G.L. c. 111, §§ 70 and 70E, to limit the availability of hospital records." *Alberts*, 395 Mass. at 67. Vita alleges that BIDMC breached its duty "by failing to exercise reasonable care in safeguarding and protecting" her confidential medical information. ECF 33, ¶ 236. The fact that other hospitals may have likewise used Google Analytics and Meta

20

Pixel is no defense to BIDMC's alleged misconduct. *See id.* ¶¶ 76, 163. Vita finally alleges that she was harmed by BIDMC's disclosure of her medical information because, among other reasons, that information is no longer private and she was not compensated for BIDMC's use of such information. *Id.* ¶¶ 10, 15-16, 157, 184, 242. These allegations are sufficient to plead duty, breach, causation, and damages. *See Tenet Healthcare*, 731 F. Supp. 3d at 148-49 (denying motion to dismiss negligence claim where plaintiff was allegedly "injured because her Private Information—including her identity, patient status, and her health conditions and treatments—was collected and transmitted to Facebook and third parties without her consent" by defendant).

BIDMC protests that Vita's alleged damages are precluded by "the economic loss doctrine, which provides 'that purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage.'" *Passatempo v. McMenimen*, 461 Mass. 279, 302 (2012) (quoting *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993)). Massachusetts courts have not, however, "applied the economic loss rule to claims of negligence by a fiduciary." *Clark v. Rowe*, 428 Mass. 339, 342 (1998); *see 695 Atl. Ave. Co., LLC v. Com. Const. Consulting, Inc.*, 64 Mass. App. Ct. 1109 (2005) (Rule 1:28 Decision) (affirming dismissal of negligence claim based on economic loss doctrine where plaintiffs did not allege that "the parties were in a fiduciary relationship"). Since BIDMC is plausibly a fiduciary of Vita, the economic loss doctrine does not apply at this stage. *See In re Shields*, 721 F. Supp. 3d at 161 ("the economic loss doctrine d[id] not provide a shield to Plaintiffs' negligence claim" where defendant allegedly "provided them healthcare" and "was their fiduciary"); *Shedd*, 2022 WL 1102524, at *8 (same where defendant

allegedly disclosed "confidential medical information").[10] Accordingly, Vita's negligence claim will not be dismissed.

## V.        **Breach of Confidence.**

Count V, which asserts a claim for "Breach of Confidence," alleges that BIDMC violated the confidence that Vita placed in it to safeguard her private information. ECF 33, ¶¶ 243-54. BIDMC argues, and the Court agrees, that no such independent claim is cognizable under Massachusetts law, at least in this context. Vita cites to only two cases referencing this claim. The first is an unpublished decision by the Appeals Court. *See Li v. Off. of Transcription Servs.*, 90 Mass. App. Ct. 1115 (2016). While this "decision may be consulted for persuasive value, it is not binding precedent." *311 W. Broadway LLC v. Zoning Bd. of Appeal of Bos.*, 90 Mass. App. Ct. 68, 73 n.6 (2016); *accord Chace v. Curran*, 71 Mass. App. Ct. 258, 261 n.4 (2008). Exclusively citing a Ninth Circuit case applying California law, the Appeals Court in *Li* dismissed the *pro se* plaintiff's claim for "'Breach of Confidence'" without acknowledging the existence of such a claim under Massachusetts law. 90 Mass. App. Ct. 1115 (citing *Berkla v. Corel Corp.*, 302 F.3d 909, 917 (9th Cir. 2002)). The second is a case in which this Court, citing *Li*, similarly dismissed a breach of confidence claim. *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024). Absent binding precedent from Massachusetts courts identifying breach of confidence as a standalone claim, the Court will not infer that such a claim exists.

Vita alternatively relies on *Alberts v. Devine*, which held that "a patient has a nonstatutory, civil remedy against a physician if the physician, without the patient's consent, makes an out-of-court disclosure of confidential information obtained in the course of the physician-patient

---

[10] BIDMC, once again, fails to distinguish this action from these cases, where the plaintiffs, unlike Vita, were patients of the defendant provider.

relationship." 395 Mass. at 65. In so holding, the SJC created a new "cause of action sounding in tort against the physician" for violating the "duty of confidentiality that arises from the physician-patient relationship." *Id.* at 69. But Vita does not cite case law extending this cause of action beyond the physician-patient relationship; to the contrary, when the SJC has referenced the *Alberts* claim, it has referred only to "disclosure of communications between patient and physician." *Commonwealth v. Dube*, 413 Mass. 570, 572 n.3 (1992); *see also, e.g.*, *Schwartz v. Goldstein*, 400 Mass. 152, 154 (1987) ("The remedy for a breach of the physician's duty of confidentiality lies in an action for damages against the physician[.]"). That understanding of the scope of the *Alberts* cause of action aligns with the SJC's reasoning, which rooted the new claim in "a patient's valid interest in preserving the confidentiality of medical facts communicated to a physician or discovered by the physician through examination." *Alberts*, 395 Mass. at 65. To the extent Vita relies on *Alberts* more broadly for the proposition that hospitals have a duty, like physicians, to safeguard private health information, that argument is duplicative of Vita's breach of fiduciary duty claim, which, as discussed, will not be dismissed.

Absent a basis in Massachusetts law for extending the *Alberts* cause of action to this context, the Court does not understand *Alberts* to authorize a "breach of confidence" claim against BIDMC here. Vita's claim for breach of confidence must therefore be dismissed.

## VI.    Breach of Contract.

Count VI alleges that BIDMC breached its express or implied contracts with Vita in which it agreed to protect her private medical information from disclosure. To demonstrate a breach of an express contract, Vita must plausibly allege that "'there was an agreement between the parties; the agreement was supported by consideration; [she] was ready, willing, and able to perform [her] part of the contract; [BIDMC] committed a breach of the contract; and [she] suffered harm as a

result." *Columbia Plaza Assocs. v. Ne. Univ.*, 493 Mass. 570, 581 (2024) (quoting *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016)). Further, in "the absence of an express agreement, an implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties." *T.F. v. B.L.*, 442 Mass. 522, 526-27 (2004). An implied contract "'is an obligation created by law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.'" *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 643 (2013) (quoting *Salamon v. Terra*, 394 Mass. 857, 859 (1985)). Because the theory of an implied contract involves "a legal obligation closely akin to a duty to make restitution," considerations "of equity and morality play a large part" in determining whether such a contract exists. *Salamon*, 394 Mass. at 859 (quotation marks omitted).

Vita plausibly alleges that BIDMC breached an implied contract by disclosing her confidential medical information to Meta and Google.[11] As pled, Vita chose to enter her private information into BIDMC's website in order to research its doctors and services. ECF 33, ¶ 256. In exchange for submitting that information, BIDMC agreed not to disclose the information to third parties without her consent. *Id.* ¶ 257. Vita reasonably expected that BIDMC would not share her health information because it promised that it would not do so. *Id.* ¶¶ 32, 229, 257. BIDMC's Privacy Policy assured website users that it would "not share any information [it] receive[d] with any outside parties" "[e]xcept for authorized law enforcement investigations or other facially valid legal processes," and that data would be collected on only an "aggregate, anonymous basis, which means no personally identifiable information [would be] associated with the data." *Id.* ¶ 257 (quotation marks omitted). But BIDMC allegedly breached this implied contract by disclosing

---

[11] Having so concluded, the Court does not reach Vita's alternative theory that BIDMC breached an express contract.

Vita's confidential information to Meta and Google. *Id.* ¶ 259. Vita alleges that she has "been denied the benefit of the bargain of [her] agreement with" BIDMC, which financially benefited from her confidential medical information through improved marketing. *Id.* ¶¶ 10, 180, 184, 260. These allegations are sufficient to state a plausible claim for breach of an implied contract. *See Tenet Healthcare*, 731 F. Supp. 3d at 150 (denying motion to dismiss such a claim alleging that the defendant "breached its implied contractual obligations by using third-party trackers on its Website" where "Plaintiff paid [defendant] for healthcare services with the understanding that [it] would maintain [her] Private Information confidentially, as expected in a physician-patient relationship"); *accord Baystate Health*, 2026 WL 776861, at *6.[12]

BIDMC's arguments for dismissal of this claim are unpersuasive. Vita need not, as BIDMC argues, have alleged that BIDMC assented to the implied contract. *See Salamon*, 394 Mass. at 859. BIDMC's contention that the implied contract lacked "certain and definite terms," ECF 40, at 33, is belied by its alleged explicit promises of confidentiality, *see* ECF 33, ¶¶ 32, 257. BIDMC also asserts that there was no consideration, but this assertion overlooks Vita's allegation that BIDMC obtained a benefit from its receipt of her medical information. *Id.* ¶¶ 9-10, 260; *see Emerson Hosp.*, 2023 WL 8869624, at *4 & n.10 (finding consideration in similar circumstances and holding that the "allegations sufficiently suggest[ed] that [defendant] may have entered into an implied contract which included an agreement not to disclose health information to third parties, like Facebook, without consent"). BIDMC's related argument that Vita was not harmed by its alleged misconduct is similarly contradicted by her allegation that it "took something of value from [her] . . . and derived benefit therefrom without [her] . . . knowledge or informed consent and without

---

[12] BIDMC again makes no argument that such cases are distinguishable, even though Vita, unlike the plaintiffs in those cases, is not herself a patient.

compensation for such data." ECF 33, ¶ 184(g). At this stage, dismissal of Vita's claim for breach of an implied contract is not warranted. *See Baystate Health*, 2026 WL 776861, at \*6.

## VII.    <u>Unjust Enrichment.</u>

Count VII asserts that BIDMC has been unjustly enriched by selling Vita's confidential medical information without her consent. "Unjust enrichment is the 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Columbia Plaza Assocs.*, 493 Mass. at 588-89 (quoting *Sacks v. Dissinger*, 488 Mass. 780, 789 (2021)). To sustain her claim of unjust enrichment, Vita must allege that "(1) [she] 'conferred a measurable benefit' on [BIDMC], (2) [she] 'reasonably expected compensation,' and (3) '[BIDMC] accepted the benefit with knowledge' of that reasonable expectation." *Tody's Serv., Inc. v. Liberty Mut. Ins. Co.*, 496 Mass. 197, 200 (2025) (quoting *id.* at 589).

The second amended complaint plausibly states a claim of unjust enrichment by alleging that BIDMC knowingly profited from Vita's private medical information without her permission. Vita alleges that she conferred a measurable benefit upon BIDMC, "without authorization and proper compensation," through its collection and disclosure of her "monetizable communications" containing confidential information, which it used "for its own [financial] gain." ECF 33, ¶¶ 264-66. Vita also alleges that she expected her information to remain private and would not have consented to the disclosure of that information to third parties or would have requested compensation for its usage. *Id.* ¶¶ 229, 269. Cases may exist where "'the remedy for unjust enrichment gives the plaintiff something—typically, the defendant's wrongful gain—that the plaintiff did not previously possess.'" *Lanier v. President & Fellows of Harvard College*, 490 Mass. 37, 69 (2022) (Budd, C.J., concurring) (citation omitted). This action seeks such "disgorge[ment]" of the alleged "benefits that BIDMC unjustly received." ECF 33, ¶ 270. These

benefits are, contrary to BIDMC's assertion, sufficiently measurable. *See Tenet Healthcare*, 731 F. Supp. 3d at 151 (denying motion to dismiss unjust enrichment claim where plaintiff allegedly "knowingly conferred a benefit on [defendant] in the form of her Private Information, which is valuable marketing information to third parties"); *Emerson Hosp.*, 2023 WL 8869624, at *5 (same where plaintiff "allege[d] that he conferred a benefit on [defendant] in the form of his health information, which, given its confidential nature, has significant value in the marketplace").

BIDMC protests that Vita has an adequate remedy at law in her other claims. The second amended complaint states that the unjust enrichment "claim is pleaded in the alternative to [Vita's] other causes of action." ECF 33, ¶ 263. While "damages for breach of contract and unjust enrichment are mutually exclusive, 'it is accepted practice to pursue both theories at the pleading stage.'" *Zelby Holdings, Inc. v. Videogenix, Inc.*, 92 Mass. App. Ct. 86, 93 (2017) (quoting *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140-41 (1st Cir. 2012)). It is also premature to "'presuppos[e] the existence of a valid underlying [express] contract'"—an issue that the Court has not reached— and thus dismiss the claim for unjust enrichment. *Chang v. Winklevoss*, 95 Mass. App. Ct. 202, 211 (2019) (quoting *id.*); *see supra* note 11. Accordingly, Vita's unjust enrichment claim survives the pleading stage.

**CONCLUSION AND ORDER**

For the foregoing reasons, BIDMC's motion to dismiss, ECF 39, is GRANTED with respect to Count V and otherwise DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
Dated: August 14, 2026                    UNITED STATES DISTRICT JUDGE